State v. Marsh.

## State v. Marsh.

In an indictment on the statute for falsely and fraudulently mortgaging personal property to prevent it from being taken on legal process for the mortgagor's debts, if the debt or obligation intended to be secured is falsely described in the condition of the mortgage, and the mortgage is made in whole or in part for the purpose of preventing the property mortgaged from being seized on legal process, this is in law a fraud on the creditors of the mortgagor, and the making of the mortgage is a violation of the statute.

If the defendant make such a mortgage with intent to prevent the property mortgaged from being taken on legal process for his debts, he is guilty under the statute, though he was advised by counsel that the mortgage would be legal and valid.

INDICTMENT, on the statute for falsely and fraudulently mortgaging personal property to prevent it from being attached in mesne process.

It appeared on trial that the defendant, being in debt and pressed for payment, agreed, early in May, 1856, with one Isaac Brown, who was his brother-in-law, and had been before employed by him as travelling agent for the sale of books, to give Brown $442.00 for one year's work as canvassing agent for

magazines, the year to commence May 1, 1856; that he gave Brown his note for that sum, and took from him a receipt for that amount in payment for his services as such agent, for one year, commencing May 1, 1856.

On the 13th of May, 1856, the defendant, after consulting counsel, gave Brown a mortgage of the goods in question, to secure payment of the before mentioned note, and the oath was taken by the parties, describing the sum named in the note as a debt to be paid, in the usual form required by the statute.

The court instructed the jury that the State was bound to prove that the mortgage was false and fraudulent, and that it was made to prevent the attachment of the property on legal process: That if they should find that the note described in the mortgage was given to secure the payment of $442.00, upon a special agreement to pay that sum for certain services agreed to be rendered at a future time, the mortgage was false in describing the note as a debt, inasmuch as the statute requires that any special agreement, secured by a mortgage of personal property, shall be described as such in the condition, and the affidavit shall be varied so as to verify the validity, truth and justice of such agreement, and this was equally necessary, though a note was given to secure the payment; and that in determining this point the note and the writing made by Brown should be considered together:

That if they should find that the mortgage was made, wholly or in part, for the purpose of preventing the attachment or seizure of the property mortgaged, on legal process, this was in law a fraud upon the creditors, and making such a mortgage was a violation of the statute:

That if they should find that the respondent consulted counsel in reference to the validity of such mortgage, and stated to him all the facts which appeared on the trial, and such counsel advised him that the mortgage would be legal and valid, the making of such mortgage would be, nevertheless, a violation of the statute, and the respondent should be found guilty.

To these instructions the respondent excepted, and the jury

having returned a verdict of guilty, he moved to set it aside, for error in the instructions.

*Bell*, Solicitor, for the State.

*Towle*, for the defendant.

PERLEY, C. J. To constitute the statutory offence charged in the indictment, there must be an actual fraudulent intention to prevent the property mortgaged from being attached for the debts of the mortgagor; and the instructions of the court on this point appear to have been clear and quite correct. It was left to the jury, as matter of fact, to find whether the mortgage was made, wholly or in part, for the purpose of preventing the attachment or seizure of the property mortgaged on legal process.

The instructions of the court as to what would in law amount to a false description of the debt or obligation in the condition of the mortgage, were according to the decision in *Belknap* v. *Wendell*, 11 Foster (31 N. H.) 92, and are not now complained of.

The court did not undertake to decide on the evidence that the conveyance was fraudulent, but properly stated what would constitute in law a false description in the condition of the mortgage; and that if the mortgage was made with the design of preventing the property from being taken for the mortgagor's debts, it would be a fraud on his creditors; and whether it was made with that design was left to the jury to find, as matter of fact.

The jury, to convict the defendant, must, under the instructions of the court, have found as matter of fact that the defendant made the mortgage fraudulently, to prevent the property mortgaged from being taken on mesne process for his debts. The case supposes that the defendant was advised by counsel that if he put this false description of the debt or obligation in the mortgage, and made the mortgage for the purpose of preventing the mortgaged property from being taken for his debts, the mortgage would be legal and valid; and it is contended that though he did

State *v.* Marsh.

the criminal act defined in the statute, with the criminal intent necessary to make it on general principles a legal offence, yet if he had the opinion of counsel that the act was not within the law, he would not be guilty and could not be convicted; or, in other words, if he had the advice of counsel that he could do the criminal act with impunity, he would not be guilty; for neither the moral character nor the practical consequences of the act are changed by the opinion that the defendant or his counsel may have entertained of his liability, as coming within the penalty of the statute.

Such a defence cannot be admitted in the administration of the criminal law. It would make an inquiry necessary in all cases into the views which the defendant might have entertained upon the construction of the law under which he was tried; and if it should be found that, relying on the advice of counsel, he thought his act did not come within the law, he could not be convicted. If the defendant had such advice as is supposed in this case, it would amount to no more than this: that, being misled by the opinion of counsel, he acted in ignorance of the law, or under a mistake of the law, which cannot be set up as a defence. It is not contended that he was deceived as to the effect and practical operation of the mortgage; if he had been, that might have gone to show that, as matter of fact, he did not make the mortgage with the intention of defrauding his creditors; but the fact being found that he made the mortgage with that criminal intent, his ignorance that he was liable to be punished for the crime is no legal excuse. If a man thinks he has a right to kill a person outlawed as *caput lupinum,* and does so, it is murder; for a mistake in point of law, in criminal cases, is no defence. Every man is presumed to be cognizant of the statute law of the realm and to construe it right; and if any individual should infringe, through ignorance, he must nevertheless abide by the consequences of his error. Hale's Pleas of the Crown 42; Broom's Maxims 201.

*Judgment on the verdict.*